**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGELA GOWER, individually and as administrator of the Estate of Lowell E. Gower, Jr., *et al.*, | ) ) ) | CASE NO. 5:24-CV-01139 |
| | ) ) | JUDGE CHARLES ESQUE FLEMING UNITED STATES DISTRICT JUDGE |
| Plaintiffs, | ) ) | |
| v. | ) ) | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| CITY OF MASSILLON, OHIO, *et al.*, | ) ) | |
| Defendants. | ) ) ) | **OPINION AND ORDER** |

## I.    INTRODUCTION

Plaintiffs—the surviving spouse and children of Lowell E. Gower, Jr.—allege that Mr. Gower passed away in June 2023 as a result of excessive force applied by police officers of the Massillon Police Department in March 2023. (*See* Am. Compl., ECF No. 17.) They assert federal claims under 42 U.S.C. § 1983 against the City of Massillon, its police chief, and a number of other named and John Doe police officers (collectively, "Defendants"). (*Id.*) They also assert several state law claims, including failure to intervene, wrongful death, negligent hiring and training, and failure to properly respond to public records requests. (*Id.*)

The Defendants admit that officers responded to a call for service in March 2023 and placed Mr. Gower in handcuffs during the interaction. (*See* Ans., ECF No. 20.) The Massillon Fire Department was called to the Gower residence during the interaction. (*See id.*) The Defendants largely deny the Plaintiffs' other allegations, disclaim any liability, and have asserted affirmative defenses. (*See id.*)

1

This matter has been referred to me for pretrial supervision and the resolution of non-dispositive motions. (*See* Order [non-document], Dec. 12, 2025.)

Currently pending is the Plaintiffs' Motion to Compel Production of Documents (ECF No. 41), in which they ask the Court to compel the production of documents from the Defendants pursuant to Rule 37 of the Federal Rules of Civil Procedure. (ECF No. 41, PageID# 234.) Specifically, they seek to compel the production of any employment-related psychiatric evaluations and drug screening results in Defendants' possession for named Defendant police officers Jacob Jones, Jason Neidert, and Collin Yoder and a police officer with the surname Smart. (*Id.*) For the reasons set forth below, the motion is DENIED.

## II.     PROCEDURAL HISTORY

Plaintiffs filed a complaint against several of the Defendants on July 8, 2024. (ECF No. 1.) An answer was filed on September 4, 2024. (ECF No. 9.) After a case management conference (ECF No. 13) and the service of initial disclosures (ECF Nos. 15, 16), the Plaintiffs filed an amended complaint—the operative complaint in this matter—on December 16, 2024. (ECF No. 17.)

I recount the Plaintiffs' allegations that are relevant to the resolution of the motion to compel. Plaintiffs allege that officers from the Massillon Police Department were called to the Gower residence on March 19, 2023, after Mr. and Ms. Gower had been in an altercation. (*Id.*, PageID# 67.) One or more of the responding officers decided to place Mr. Gower under arrest. (*Id.*) One or more of the officers placed Mr. Gower in handcuffs. (*Id.*) One or more of the officers attempted to escort Mr. Gower to a police cruiser, and he was fully compliant, but one of the officers nevertheless "violently and without justification slammed" Mr. Gower to the ground. (*Id.*) This action caused spinal fractures and a cord contusion, leading to quadriplegia and, ultimately,

death. (*See id.*, PageID# 67–69.)

Defendants filed their answer on December 30, 2024. (ECF No. 20.) They asserted qualified immunity, among other defenses, and they largely denied the allegations in the Amended Complaint either substantively or for lack of knowledge. (*See generally id.*)

Because it is relevant to the resolution of the pending motion, I summarize portions of the Defendants' litigation descriptions of the events of March 19, 2023.

The Defendants, through counsel, have described that officers responded to a call for service from Mr. Gower's stepson on the night in question; the stepson had reported a "violent attack" on Ms. Gower. (*See* ECF No. 33, PageID# 187.) The Defendants encountered an "extremely intoxicated" Mr. Gower, placed him in handcuffs, and were attempting to carry him or escort him to a police cruiser when he "pulled away from them." (*See id.*, PageID# 182, 187; Ans., ECF No. 20, PageID# 83.) Specifically, the Defendants in their briefing describe that Officer Neidert was escorting Mr. Gower on one side when he "believed that the suspect made a sound and a motion" suggesting that Mr. Gower was going to spit on him. (ECF No. 43, PageID# 247.) Officer Neidert felt Mr. Gower start to pull away from him, "and the two went to the ground together." (*Id.*) Officer Neidert controlled Mr. Gower to the ground in a manner consistent with department policy. (*See id.*)[1]

Plaintiff Angela Gower[2] served a set of requests for production of documents on the City

---

[1] The Plaintiffs ask the Court to "disregard" the Defendants' description of the encounter for purposes of resolving the Motion to Compel. (Reply, ECF No. 44, PageID# 253.) I largely agree that the operative facts remain heavily disputed at this point, and I express no opinion and make no factual findings on the underlying merits of the Plaintiffs' claims or the Defendants' defenses. I recite the parties' respective allegations and descriptions of the encounter solely because the parties dispute what discovery is relevant and proportional under Rule 26, and consideration of the parties' positions helps clarify the extent of the parties' factual disputes and therefore informs what is relevant and proportional here.

[2] Ms. Gower is Mr. Gower's surviving spouse and brings this action both individually and as the administrator of Mr. Gower's estate. (Am. Compl., ECF No. 17.)

of Massillon on January 6, 2025. (Notice, ECF No. 21; RFPs, ECF No. 32-2.) Among other categories of documents, Ms. Gower requested "the complete personnel file for all persons who are defendants in this Litigation and who are or were employed by Massillon at the time of the Incident, including any records of disciplinary actions, training, and performance evaluations." (ECF No. 32-2 at RFP No. 8, PageID# 156.)

The City responded to that request on February 13, 2025, writing, "Will be supplemented." (Notice, ECF No. 22; Mot. Compel, ECF No. 41, PageID# 236.)[3] The City produced documents on the same day that it served its responses, and it supplemented its responses with productions on February 13 and March 21, 2025. (*See* ECF No. 24, PageID# 97.) The City produced a privilege log in connection with its March 21 production. (*See* ECF No. 32-5, PageID# 174; ECF No. 41, PageID# 235–36.) The City identified that it was withholding certain records pursuant to Section 149.43(A)(1)(a) and (8)(c) of the Ohio Revised Code and pursuant to the Health Insurance Portability and Accountability Act (HIPAA). (*Id.*) Specifically, the City identified that it was withholding:

- Medical records from Aultman Hospital or other providers related to all of the defendant police officers, including drug screening results; and

- Psychological evaluation reports for Officers Jones, Yoder, and Smart, which had been prepared by a "Dr. Devies."

(*Id.*)

In a joint status report filed on May 19, 2025, Plaintiffs' counsel wrote that they were in

---

[3] The record does not include a complete copy of Defendants' responses, but the Plaintiffs represent that the City noted in its response that "there are some . . . documents we are still processing, including some personnel files of the officers . . ., but [defense counsel] hope[s] to have those to [plaintiff counsel] by next week." (*See* ECF No. 32-1, PageID# 122.) Beyond these responses, if the Defendants asserted an objection to this request in their initial response, neither party has brought that fact to the Court's attention. *See* Fed. R. Civ. P. 37(b)(2)(B) (requiring a responding party, for "each item or category" requested, to "state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting . . . ."). Nevertheless, as the Plaintiffs do not argue that production is warranted based on a failure to object, the Court need not dwell on the matter.

the process of reviewing Defendants' document productions "for completeness." (ECF No. 24, PageID# 97.)

Plaintiffs' counsel sent a letter to Defendants' counsel on July 16, 2025, identifying a number of alleged deficiencies in the City's discovery responses. (ECF No. 32-3.) Counsel does not seem to have raised any alleged deficiency with respect to the production of officer psychological evaluations or drug screening records in the letter. (*See generally id.*; *see also* Mot. Compel, ECF No. 41, PageID# 235 (citing the second deficiency letter)).

The City served supplemental responses to Ms. Gower's discovery requests in August 2025. (ECF No. 30; *see also* Joint Mot., ECF No. 31, PageID# 112.) On September 18, 2025, the Plaintiffs' counsel noted that they were still in the process of reviewing the productions for completeness. (ECF No. 31, PageID# 112.)

Plaintiffs' counsel sent a second deficiency letter to Defendants' counsel on September 25, 2025. (ECF No. 32-4.) Among other things, counsel argued that Ohio public records laws and HIPAA were either not a recognized privilege or were inapplicable to litigation. (*Id.*) Counsel wrote that they were "agreeable to a protective order for any sensitive subjects, such as life events or psychological conditions . . . ." (*Id.*)

The Defendants' counsel responded on October 3, 2025. (ECF No. 32-6.) Counsel raised an issue with the timing of the letter, noting that the log had been provided in March 2025 and an issue was not raised until October 2025, but counsel represented that they were reviewing the matter and would respond. (*Id.*)[4]

Defense counsel left a voicemail and sent Plaintiffs' counsel a follow-up letter in October

---

[4] Plaintiffs' counsel, for their part, have said—without further explanation—that it did not come to their attention until around September 2025 that the City had withheld these psychological evaluations and other personnel background documents. (*See* ECF No. 32-1, PageID# 123.)

2025. (ECF No. 32-8; *see also* ECF No. 32-1, PageID# 124; ECF No. 36.) Defense counsel stated that they would not produce the drug screening or psychological evaluations out of the officers' personnel files. (*See* ECF No. 32-8, PageID# 179.) Counsel argued that the requested records were "entirely irrelevant" to the case and that "the officers are entitled to privacy relative to their medical records." (*Id.*)

On December 12, 2025, Plaintiffs filed a motion to compel raising this and numerous other discovery disputes. (*See* ECF No. 32.) Defendants opposed the motion, and Plaintiffs filed a reply brief. (ECF Nos. 33 and 35.)

By January 15, 2026, the Defendants had deposed all the named Plaintiffs. (ECF No. 37, PageID# 220.) Plaintiffs' counsel believed that the discovery disputes needed to be resolved before depositions of defense witnesses could be scheduled. (*Id.*) But both sides represented that the parties were participating in discovery in good faith. (*Id.*)

On January 16, 2026, the Court denied the motion to compel (ECF No. 32) without prejudice pending the parties' compliance with the requirements of LR 37.1. (ECF No. 38.) The Court ordered the parties to meet and confer on the issues raised in the motion and to contact my chambers if any matters remained in dispute after the conference. (*See id.*, PageID# 226.)

After the parties conferred and could not resolve their disputes, I held a discovery hearing on January 27, 2026. (Minutes [non-document], Jan. 27, 2026.) Based on the conversation at the hearing, the parties agreed to confer again to try to narrow the issues in dispute. (*Id.*)

The parties were able to resolve several of their disputes, but the issues related to the privilege log remained unresolved along with a number of other disputes. (*See* ECF No. 39.)

I held another discovery conference with the parties on February 26, 2026. (Minutes [non-document], Feb. 26, 2026.) By the conclusion of that conference, all the disputes had been resolved

6

with the exception of the Plaintiffs' request for employment-related drug screening results and psychological evaluations. (*Id.*)

Plaintiffs filed their motion to compel production of those records on March 12, 2026. (ECF No. 41.) Defendants responded in opposition on March 26, 2026. (ECF No. 43.) Plaintiffs filed a reply brief on April 2, 2026. (ECF No. 44.)

This Opinion and Order follows.

### III.    LAW AND ANALYSIS

Plaintiffs seek the employment-related psychological evaluations and drug screening results of the police officers who responded to the Gower residence on the night of the incident at issue—Officer Neidert, the officer who used the force at issue in the litigation, and Officers Jones, Yoder, and Smart, who also attended the scene. (ECF No. 41, PageID# 234.) Plaintiffs specify that they seek pre-employment psychological evaluation reports, "potential post-employment psychological evaluation reports obtained for employment purposes," and "results of drug tests obtained as a condition of employment." (*Id.*, PageID# 236.)

Plaintiffs argue that these documents are discoverable in the context of this excessive-force and negligent-hiring civil rights action because they "may shed light on the mental states of the responding officers" and show "what [Massillon] knew regarding its officers' mental condition, when that knowledge existed, and how [Massillon] responded." (*Id.*, PageID# 240.) Plaintiffs contend that these facts could show "that the City of Massillon failed to implement adequate safeguards, failed to respond to known warning signs, and tolerated conduct that predictably culminated in the use of catastrophic force against Mr. Gower." (*Id.*)

Massillon responds that several categories of sought documents do not exist. It contends that the psychiatric and medical screening records that do exist are "completely irrelevant to the

7

issues at hand" and emphasizes that that the records contain confidential, protected information about the individual officers. (ECF No. 43, PageID# 248–49.) It further argues that the officers have a right to privacy with regard to this personal information and that the records are protected under the Health Insurance Portability and Accountability Act (HIPAA) and the Americans with Disabilities Act (ADA). It casts the Plaintiffs' request as "an unsubstantiated fishing expedition." (*Id.*, PageID# 251.)

Plaintiffs reply that the officers' right to privacy does not prohibit disclosure where there is no danger to the officers' personal safety; that HIPAA and the ADA do not apply because Massillon is not a covered entity under HIPAA and the ADA does not create a discovery privilege; and that the balance of factors weighs in favor of disclosure because the documents are relevant and exclusively in Massillon's possession, and the burden of production is low. (*See generally* ECF No. 44.)

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26 embodies a liberal approach to discovery, and "relevance" is construed broadly for discovery purposes. *See Noakes v. Case Western Reserve Univ.*, No. 1:21-CV-01776-PAB, 2022 WL 17811630, at *2 (N.D. Ohio Dec. 19, 2022). Material "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

But discovery must also be "proportional" to the needs of the case. Fed. R. Civ. P. 26(b)(1); *see also Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 273 (6th Cir. 2021). The revised rules "ensure[] that the parties and courts share the 'collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.'"

8

*Helena Agri-Enters.*, 988 F.3d at 273 (quoting Fed. R. Civ. P. 26(b), advisory committee's note to 2015 amendment). As a result, "[i]t is now the power—and *duty*—of the district courts [to] actively manage discovery and to limit discovery that exceeds its proportional and proper bounds." *Id.* at 274 (quotation omitted, emphasis in original).

Rule 37(a)(1)(B) provides that a party may move to compel responses to discovery. Fed. R. Civ. P. 37(a)(1)(B). The party moving to compel "bears the burden of demonstrating [the] relevance" of the requested discovery. *White v. City of Cleveland*, 417 F. Supp.3d 896, 902 (N.D. Ohio Oct. 25, 2019) (quoting *CSX Transp., Inc. v. Columbus Downtown Dev. Corp.*, No. 2:16-cv-557, 2019 WL 1760069, at *4 (S.D. Ohio Apr. 22, 2019)). If the moving party demonstrates that the requested material is relevant, "the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Id.* (quoting *CSX Transp.*, 2019 WL 1760069, at *4).

Courts have broad discretion in overseeing the scope of discovery and ruling on motions to compel. *See James v. Cuyahoga Cnty.*, 648 F. Supp. 3d 897, 903–04 (N.D. Ohio 2022). In considering the scope of discovery, the Court may balance a plaintiff's "right to discovery with the need to prevent 'fishing expeditions.'" *See Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

Plaintiffs contend that records they seek are relevant because Plaintiffs have raised a § 1983 municipal-liability claim against Massillon under *Monell v. Department of Social Services*, whereby they allege that Massillon has an official policy or custom that caused a deprivation of Mr. Gower's constitutional rights. *See Monell*, 436 U.S. 658, 694 (1978).

Generally, a municipality is not liable "for an injury inflicted solely by its employees or agents." *Id.* at 694. In other words, the fact that a municipality employs a tortfeasor, without more,

9

is not sufficient to impose liability. *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1038 (6th Cir. 2024). A municipality is liable only for its *own* illegal acts. *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)).

So, as Plaintiffs are seeking to hold Massillon liable under *Monell*, they must connect its employees' conduct to a municipal policy or custom. *See Kovalchuk*, 95 F.4th at 1038 (citing *Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022)). To do so, Plaintiffs must demonstrate one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citation omitted).

Here, Plaintiffs allege that Massillon's "policies, practices, customs, and usages regarding arrests, subject control, use of force, and the documentation of uses of force were and are a moving force behind the excessive force" used on Mr. Gower. (Am. Compl., ECF No. 17, PageID# 71–72.) They further allege that Massillon "customarily allows officers to use excessive force without being held accountable or disciplined for their misconduct" and, indeed, did not discipline any of the defendant police officers for the incident involving Mr. Gower. (*Id.*) They claim that the City failed to institute adequate municipal policies, procedures, customs, usages, practices, and protocols regarding use of force discipline and failed to institute and train supervisors and officers to hold each other accountable when excessive force is used in the field. (*Id.*) Finally, they argue that the City did not adequately train its officers in the proper use of force, and its training was deliberately indifferent to the rights, safety, and health of the citizens. (*Id.*)

Plaintiffs contend that the psychological evaluations and drug-screening results in the

identified officers' personnel files go directly "to the heart" of these claims. Plaintiffs sort the records into three buckets: pre-employment psychological evaluations, post-incident psychological evaluations, and "evidence of mental state," which presumably refers to the drug screening records.

With respect to pre-employment psychological evaluations, Plaintiffs contend that the records are "probative of whether [Massillon] ignored known risks associated with the officers it placed on the street." It argues that the records are relevant with respect to Officer Neidert (who used the force at issue), but also with respect to other officers at the scene because Plaintiffs claim that those officers improperly "did not describe to EMS what happened to Mr. Gower" and otherwise "attempted to cover for the excessive use of force."

With respect to post-incident evaluations, Plaintiffs say that these records are relevant because they "may contain statements regarding the incident in question."

And with respect to "evidence of mental state," Plaintiffs merely claim that the evidence is "critical to these issues."

### 1. Post-Incident Evaluations and Pre-Employment Evaluation of Officer Neidert

Massillon argues against an order compelling discovery of certain records because those records do not exist. For example, Plaintiffs request the production of any pre-employment psychiatric evaluation contained in Officer Neidert's personnel file. Defense counsel represents that there is no pre-employment psychiatric evaluation for Officer Neidert within his personnel file.

Plaintiffs also request any post-incident psychological evaluations contained in the officers' files. Here again, defense counsel represents that there are no post-incident psychological

screenings in the officers' files. (*See* ECF No. 43, PageID# 251.)[5]

"Ordinarily, the representation of a party's attorney that no additional documents exist is sufficient to defeat a motion to compel absent credible evidence that the representation is inaccurate." *Snyder v. Fleetwood RV, Inc.*, No. 2:13-cv-1019, 2016 WL 339972, at *6 (S.D. Ohio Jan. 28, 2016). Plaintiffs do not seem to dispute defense counsel's representations on these matters, and they have not pointed to evidence that defense counsel's representation is inaccurate.

Therefore, the Court denies the motion to compel the production of a pre-employment psychiatric evaluation for Officer Neidert or post-incident psychological evaluations of the identified officers, as those records do not exist.

### 2. Scope of Medical Records Sought

Plaintiffs in their motion to compel seek "drug screening results" for the identified officers. (ECF No. 41, PageID# 234.) But in their memorandum in support of the motion, they seem to expand that request to also encompass "fitness-for-duty evaluations." (*See id*, PageID# 240.) In context, it is possible that Plaintiffs' reference to fitness-for-duty evaluations was meant to clarify its request for post-incident psychological records. But to the extent that Plaintiffs seek medical records regarding the officers' physical fitness for duty, either pre-employment or post-incident, the Court clarifies that that request will be denied.

Plaintiffs had not discussed physical fitness-for-duty evaluations in the several discovery conferences the Court has held in the matter, and the parties represented that they had resolved all

---

[5] Specifically, counsel advised that "no such documents were part of the information previously withheld under the privilege log and the deposition testimony of Officer Neidert seems to indicate that no such screenings took place." (ECF No. 43, PageID# 251.) Considering the scope of the original document request, the nature of the objection to production, and the discussions on the matter to date, the Court accepts this as a representation that the officers' personnel files have been reviewed and do not contain post-incident psychological evaluations. If the Court has misunderstood counsel's representation, counsel should ensure that the Court's understanding of the matter is accurate and inform the Court if counsel finds that any such records do exist.

discovery disputes except for the issue of psychological examinations and "officer drug screening results from Aultman Hospital and/or other providers." (*See* Minutes [non-document], Feb. 26, 2026.) The Court will not revisit other discovery issues at this point in the proceedings that could have been but were not raised previously.

### 3. Pre-Employment Psychiatric Evaluations

Turning to the central arguments presented by the motion, Plaintiffs seek to compel any pre-employment psychiatric evaluations for named Defendant police officers Jacob Jones and Collin Yoder and a police officer with the surname Smart.[6] (*Id.*)

Defense counsel represents that Massillon possesses these officers' personnel files and that the files contain psychological evaluation reports for these three officers that were prepared by a professional identified as "Dr. Devies." Counsel further represents that these evaluations were conducted as part of the hiring process for these officers.

Plaintiffs point to a number of cases in which courts have compelled the production of a police officer's pre-employment psychological evaluation in the context of litigating an excessive force civil rights claim. *E.g.*, *Mesa v. Lafayette City Parish Consolidated Government*, No. 06-cv-0435, 2007 WL 1343269, at *1 (E.D. La. May 4, 2007) (but note that one officer appealed the ruling, and the district court judge sustained the objection, *see id.* at *1 n.2); *Hinkel v. Colling*, No. 20-CV-166-NDF, 2021 WL 2697539, at *3 (D. Wy. June 30, 2021); *Myles v. County of San Diego*, No.: 15cv1985-BEN (BLM), 2016 WL 2343914, at *15 (S.D. Cal. May 4, 2016) (but

---

[6] Neither party identified Officer Smart's first name. The Court presumes that Officer Smart is a police officer who attended the scene at the Gower residence on the night in question but who is not specifically named in the Amended Complaint. Ms. Gower's document request was limited to the personnel files of "persons who are defendants in this Litigation" (ECF No. 32-2 at RFP No. 8, PageID# 156). However, as Massillon has not raised an objection or argument that the request for materials from Officer Smart's personnel file is outside the scope of the request, the Court need not trouble itself further over the matter.

requiring production for in camera review "given the very personal nature of the documents").

Massillon points to no case where a Court has declined to produce a pre-employment psychological evaluation in the context of a lawsuit raising a *Monell* claim. But courts have denied these requests, too. *E.g.*, *Mitchell v. City of Warren*, No. 09–CV–11480, 2012 WL 1405856, at *2 (E.D. Mich. Apr. 23, 2012).

In wrestling with whether to produce such records, courts consider among other things the nature of the evaluation (is it a complete evaluation with content, or merely a "yes/no" answer to whether the applicant is fit for duty as a police officer), whether the officer knew that the evaluation would be disclosed to the police department, and the nature of the claims asserted in the lawsuit. *See, e.g.*, *Mitchell*, 2012 WL 1405856 at *2 (denying disclosure where the full evaluation report was never produced to the department and where the officer did not authorize disclosure of the full report); *Kamper v. Gray*, 182 F.R.D. 597 (E.D. Mo. Oct. 30, 1998) (ordering disclosure where the officer submitted to an evaluation before he was hired and understood that the results would be submitted to the department).

Massillon did not provide detail as to the form of the evaluations in the officers' files, whether the evaluations are full psychological reports or merely an indication as to whether Dr. Devies found the officers mentally fit for duty. Nor does the Court have information about whether the officers knew that their evaluations would be provided to the department (for example, if the reports are accompanied by signed disclosure authorization forms).

However, because the Court resolves the motion based on proportionality considerations, it will assume—without deciding—that Plaintiffs are correct that the subject evaluations are nonprivileged records that the officers reasonably understood would be disclosed to the Massillon Police Department. Similarly, the Court assumes—because it need not decide—that Plaintiffs are

correct that disclosure is not prohibited by HIPAA, the ADA, Ohio statutory law, or some other privilege.

After careful consideration, the Court finds that the pre-employment psychological evaluations of the identified officers—who responded to the scene at the Gower residence but who are not alleged to have used excessive force—are not relevant and probative enough to fall within the scope of discovery under Rule 26.

Plaintiffs allege that the officers did not disclose Officer Neidert's use of force to responding EMS personnel and worked to cover up the excessive force used. The Court construes this argument as related to Plaintiffs' claim that Massillon tolerates a custom of police using excessive force. Plaintiffs have deposed a number of defense witnesses and police officers, presumably seeking information relevant to that claim. But the Court fails to see how the responding officers' pre-employment psychological evaluations could be significantly probative to that claim.

The Court finds a stronger argument in Plaintiffs' claim that Massillon is liable for not adequately screening the officers that it puts on the streets. The officers' pre-employment psychological records are arguably relevant, in that they may show (or disprove) that the City knowingly hired officers with a propensity toward aggression, risky behavior, covering for other officers, or other psychological conditions relevant to that claim. *But see Kamper*, 182 F.R.D. at 600 (finding that the pre-employment evaluation of even the officer who allegedly used the excessive force "would usually not be relevant" except that the officer's expert put the matter directly at issue in that litigation). And the Court is mindful that, with respect to a *Monell* claim, plaintiffs must have some ability to obtain records showing "how, when, and to what extent the [police] investigated and sanctioned officers who use excessive force against civilians" in order to

15

make the requisite showing. *See King v. City of Columbus*, No. 2:18-cv-1060, 2019 WL 13516345, at *6 (S.D. Ohio Oct. 31, 2019) (citation and quotation marks omitted).

But in the Court's view, the pre-employment psychological evaluations of officers who responded to the scene—but who did not use the force at issue—would be relevant only to the extent that *every* Massillon's police officer's pre-employment evaluation would be relevant.

This is not a case where a pre-employment evaluation of the officer who used force could be relevant to a consideration of whether the hiring city knew they had a propensity for violence. *Compare, e.g.*, *Hinkel*, 2021 WL 2697539 at *3 (finding a pre-employment evaluation relevant with respect to the officer who used the force because it may show "whether [the officer] was prone to use excessive force and whether the other defendants were aware of that propensity").

In other words, the support for allowing disclosure of these particular officers' evaluations—that the records may show that Massillon has a custom of making risky and unwise hiring decisions—is no stronger than would be the support for ordering the disclosure of, say, the evaluation of a random day-shift Massillon officer who had nothing to do with the incident at the Gower residence.

It cannot be that the assertion of a *Monell* claim alone in the context of a police use-of-force incident opens the door to this type of discovery. Plaintiffs offer nothing by way of deposition testimony, exhibits, proffer, or argument showing that the records they seek are likely to lead to the discovery of admissible evidence in this case. *See Morales v. Town of Glastonbury*, 2011 WL 3490080, at *4 (D. Conn. Aug. 10, 2011) (declining to order production of psychological evaluation as overbroad and unlikely to lead to admissible evidence). Seeking these records thus amounts to a request to "go fishing." *Sees Damsi v. Tarpstop, LLC*, No. 3:21-CV-0953, 2023 WL 9186657, at *6 (N.D. Ohio Oct. 19, 2023) (denying motion to compel where requests "amount[ed]

16

more to a generalized 'fishing expedition' than a targeted search for evidence").

Framed in the language of Rule 26, the Court considered that the importance of the issues at stake in this litigation is high; the Plaintiffs and the public have an interest in determining, one way or the other, whether Massillon has a custom of putting unqualified officers on the streets. Further, Massillon is uniquely in possession of the records, and Plaintiffs are correct that the expense of production is not high, especially considering Massillon's resources. The Court has considered the amount in controversy, which is substantial. These factors weigh in favor of disclosure. Fed. R. Civ. P. 26(b).

But the Court finds that these factors to be significantly outweighed by the remaining factors. These particular records are not significantly probative or important in resolving the issues in this case, and the *burden* of production on the Defendants is high. *Id.* The Court finds persuasive, though certainly not controlling, that the police officers have significant confidentiality and privacy interests in their pre-employment psychological evaluations.

The Court's decision in this regard is supported even by caselaw where production has been allowed, as courts routinely limit discovery of officer psychological records to only those records directly relevant to the use of force or closely related issues. *See Kamper*, 182 F.R.D. at 600 (limiting discovery of psychological records to documents "regarding [the officer] and his involvement in the shooting incident"); *Cessante v. City of Pontiac*, No. 07-CV-15250, 2009 WL 973339, at *5 (E.D. Mich. Apr. 9, 2009) (ordering production of psychological evaluations of the defendant officers, but only to the extent that they were "related to actual or alleged violence and/or use of excessive force, actual or alleged initiation or institution of false and/or malicious charges, arrest or litigation or [where the plaintiff had shown as issue with respect to one of the officers] the veracity of the officers"); *Myles v. County of San Diego*, No.: 15cv1985-BEN (BLM), 2016

WL 2343914 at *15 (S.D. Cal. May 4, 2016) (ordering production for *in camera* review of psychological evaluations because they may be relevant "to the extent they concern the incident at issue or any prior incidents of excessive force, racial discrimination, false arrest and false imprisonment").

The pre-employment psychological evaluations of Officer Jones, Yoder, and Smart are minimally relevant even to Plaintiffs' *Monell* claim. The Court finds that the burden of production, considering the officers' privacy interests, outweighs the likely benefit to the litigation such that disclosure is not proportional to the needs of the case. Accordingly, the Court therefore declines to compel Massillon to produce those records.

### 4. Drug Screen Records

Plaintiffs seek employment-related "drug screening results" that may be in the personnel files of the identified officers. (ECF No. 41, PageID# 234.) Neither party directs the Court to significant caselaw on the discovery of such records.

With respect to Officers Jones, Yoder, and Smart, the Court comes to the same conclusion with respect to relevance and proportionality as it did with respect to psychological evaluations. The request for their drug screening results, with no attempt to show how those records are likely to lead to the discovery of admissible evidence, is no more than a fishing expedition. While relevant to some degree to Plaintiffs' *Monell* claim, the relevance of these records is no stronger than it would be for any other Massillon police officer. And the Court finds that the proportionality factors weigh strongly against compelling disclosure here.

The question is closer with respect to Officer Neidert, as he is the officer who used the force at issue. But "[a] police officer's mental health is not placed in issue solely by virtue of allegations of excessive force . . . ." *Unger v. Cohen*, 125 F.R.D. 67, 71 (S.D.N.Y. 1989). Plaintiffs

18

have deposed a number of defense witnesses and—except for these few remaining issues addressed here—have completed written discovery. They offer nothing in support of an argument that drug-screening records in Officer Neidert's file are likely to lead to the discovery of admissible evidence.

Under these circumstances, and lacking significant caselaw in support of the Plaintiffs' position, the Court finds that proportionality also weighs against allowing the discovery of Officer Neidert's medical records. *See Bishop v. County of Suffolk*, 248 F.Supp.3d 381, 391–92 (E.D.N.Y. 2017).

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Compel (ECF No. 41) is DENIED.

**IT IS SO ORDERED.**

Dated: April 30, 2026                                    */s/ Jennifer Dowdell Armstrong*
                                                         Jennifer Dowdell Armstrong
                                                         U.S. Magistrate Judge

19